**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| AE LIQUIDATION, INC., et al., | ) | Case No. 08-13031 (MFW) |
| | ) | |
| Debtors. | ) | |
| _______________________________ | ) | |
| | ) | |
| OVER AND OUT, INC., et al., | ) | |
| | ) | Adversary No. 09-50029 (MFW) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ECLIPSE AVIATION CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of the Noteholders[2] to dismiss counts 4 and 5 of the Complaint filed by the Plaintiffs.[3] For the reasons stated below, the Court will deny the Motion.

---

[1] In this Memorandum Opinion, the Court makes no findings of fact and conclusions of law. Fed. R. Bankr. P. 7052 (applying Fed. R. Civ. P. 52 (a) which provides that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 . . . ."). The facts recited are those alleged in the Complaint or reflected in the docket of this adversary proceeding and the bankruptcy case.

[2] The Noteholders are Kings Road Investments, Ltd., Citadel Investment Group, L.L.C., and HBK Master Fund, L.P., who assert a secured claim against substantially all the assets of the Debtor.

[3] The Plaintiffs are Over And Out, Inc.; Louisiana, N400EA; Ocala Bedrock, Inc.; The Kenneth and Shair Meyer Trust; The Gray Oil & Gas Co.; Michael T. Flynn; Richard A. Smith; James Frisbie; Team Aircraft, Inc.; Max J. Cohen; Joseph J. Rusin/Northwest Ohio Int'l, LLC; Shaun Hughes; Henry Orlosky; Peter Riechers; Michael Osborne Peter Schultz; Management Tech, LLC; Robert H. Yarbrough; Linde Int'l, Inc.; Davis Air, LLC; Julian Macqueen; Richard Ryan; Jeff Reynolds; K2 Jet, LLC; James Teng; Black Falcon Aviation & Consulting, LLC; Gulfstream Nautical; Dan Mudge; and Gray & Co., Inc.

I. BACKGROUND

Eclipse Aviation Corporation (the “Debtor”) was a manufacturer of private jets with its principal place of business in Albuquerque, New Mexico. The Plaintiffs executed Eclipse 400 Aircraft Deposit Agreements (the “Agreements”) with the Debtor pursuant to which the Plaintiffs deposited $100,000 (the “Deposits”) toward the purchase of an Eclipse 400 single-engine aircraft that the Debtor was developing. Pursuant to the Agreements, the Debtor was to use the Deposits only for costs related to the development and production of the Eclipse 400 aircraft and not for general operating expenses. The Plaintiffs could receive a refund of the Deposits at any time before November 30, 2009. After that date, the Deposits were to be applied to the final purchase price of the Eclipse 400 aircraft or as liquidated damages if the Plaintiffs did not purchase an Eclipse 400 aircraft. The Deposits received from the Plaintiffs totaled not less than $3.2 million.

In August 2008, the Debtor advised its customers that the development of the Eclipse 400 aircraft had been placed on hold. In September 2008, the Debtor stated in a conference call with customers that none of the Deposits had been spent and were still segregated in accordance with the Agreements. Several of the Plaintiffs filed Eclipse 400 Refund Request Forms with the Debtor, but none of the Plaintiffs received any refund of their Deposits from the Debtor.

On November 25, 2008, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor sought to sell all of its assets pursuant to proposed bid procedures. The Court approved the bid procedures, with substantial modification, on December 23, 2008.

On January 15, 2009, the Plaintiffs commenced the instant adversary proceeding by filing a Complaint against the Debtor asserting the Debtor breached the Agreements, converted their money (the Deposits), and breached its fiduciary duty. As a result, the Plaintiffs seek, in addition to damages, the imposition of a constructive trust and an injunction prohibiting the Debtor from retaining or commingling the Deposits with the Debtor's general funds. On January 23, 2009, the Court entered an order authorizing the sale of substantially all of the Debtor's assets to EclipseJet Aviation International, Inc. ("EclipseJet") finding it had presented the highest and best offer. In conjunction with that sale, the Court directed that $3.2 million of the sale proceeds be set aside in a separate account until the issues raised by this adversary proceeding could be determined. Despite approval, the sale to EclipseJet was never consummated.

As a result, on March 5, 2009, the case was converted to chapter 7 and Jeoffrey L. Burtch was appointed trustee (the "Trustee"). The Trustee renewed efforts to sell the Debtor's assets. On August 28, 2009, the Court authorized the Trustee to

sell the Debtor's assets to Eclipse Aerospace, Inc., for $20 million in cash and a $20 million note. Once again, as a result of the Plaintiffs' Limited Objection to the sale, the Court directed that $3.2 million of the sale proceeds be set aside pending resolution of this adversary proceeding. The sale to Eclipse Aerospace, Inc., closed on September 4, 2009.

The Plaintiffs, the Trustee and the Noteholders consented to the intervention of the Noteholders in the adversary proceeding, which was granted on September 28, 2009. On October 13, 2008, the Noteholders filed a Motion to dismiss counts 4 (constructive trust) and 5 (injunction) of the Complaint. Briefing on the Motion was completed on December 8, 2009, and the matter is now ripe for decision.

## II. JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157 (b)(1). This proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K), (N), & (O).

## III. DISCUSSION

### A. Standard of Review

A Rule 12(b)(6) motion to dismiss is designed to test the legal sufficiency of the factual allegations in the plaintiff's complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).

"Standards of pleading have been in the forefront of jurisprudence in recent years." Fowler v. UPMC Shadyside, 578 F.3d 203, 209 (3d Cir. 2009). With the Supreme Court's recent decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." Fowler, 578 F.3d at 210.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a motion to dismiss. Iqbal, 129 S. Ct. at 1949. Rather, "all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." Fowler, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Determining whether a complaint is "facially plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." Id. at 1950.

After Iqbal, the Third Circuit has instructed this Court to "conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The [reviewing court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler, 578 F.3d at 210-11. Next, the reviewing court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." Id.

B. Noteholders' Motion to Dismiss

The Noteholders move for dismissal of the claims for imposition of a constructive trust and for an injunction prohibiting the Debtor or its estate from retaining or using the Deposits.

1. Scope of Intervention Stipulation

Preliminarily, the Plaintiffs assert that the Noteholders' Motion to Dismiss must be denied because it exceeds the scope of the stipulation providing for the Noteholders' intervention. See, e.g., Gautreaux v. Pierce, 743 F.2d 526, 530 n. 8 (7th Cir. 1984) (affirming denial of motion which exceeded the limited scope of intervention). The Plaintiffs contend that the stipulation permitting the Noteholders' intervention was limited to counts 4 and 5 but that the Noteholders' Motion actually attacks the Plaintiffs' other claims.

The Plaintiffs concede, however, that counts 4 and 5 are claims for remedies for the Debtor's conversion (count 2) and

breach of fiduciary duty (count 3) and are not independent causes of action. Therefore, the Court agrees with the Noteholders that their motion is not barred by the intervention stipulation. Their motion seeks to dismiss counts 4 and 5 for which they were permitted to intervene. To the extent that those counts are remedies for the other counts, as the Plaintiffs allege, the Noteholders must be able to reference those other counts to protect their interests. Stone & Webster, Adv. No. 088-51839, 2009 WL 426118, at *4-5 (Bankr. D. Del. Feb. 18, 2009) (noting that accounting claim was an equitable remedy tied to breach of fiduciary duty claim and should not be dismissed because fiduciary duty claim was not dismissed).

2. Constructive Trust

Under New Mexico law,[4] the Noteholders argue that for the imposition of a constructive trust there must be "unjust enrichment that would result if the person having the property were permitted to retain it." Gushwa v. Hunt, 197 P.3d 1, 7 (N.M. 2008). They contend that unjust enrichment occurs only where there has been fraud, undue influence or abuse of a fiduciary relationship. The Noteholders argue that the Debtor's mere breach of the Agreements or failure to pay the Plaintiffs when they demanded return of the Deposits is insufficient to create a constructive trust. McKey v. Paradise, 299 U.S. 119,

---

[4] The Agreements are governed by New Mexico law. (Agreements at § 6.)

122-23 (1936) ("The bankrupt was a debtor which had failed to pay its debt. We know of no principle upon which that failure can be treated as a conversion of property held in trust. . . . [T]he mere failure to pay a debt does not belong in that category."); Marwin Prod. Sys., Inc. v. Pratt & Whitney Co. (In re Pratt & Whitney Co.), 140 B.R. 327, 332 (Bankr. D. Conn. 1992) (court refused to impose constructive trust where debtor failed to pay after repeated demands by the creditor finding that "the debtor has committed no wrongdoing outside of not paying."); In re Rowland, 140 B.R. 206, 209 (Bankr. S.D. Ohio 1992) (noting that "generally, a mere breach of contract is insufficient to raise a constructive trust.").

The Plaintiffs respond that the cases where a constructive trust may be found under New Mexico law are extensive:

> [A] constructive trust . . . is imposed to prevent the unjust enrichment that would result if the person having the property were permitted to retain it. The circumstances where a court might impose such a trust are varied. They may involve fraud, constructive fraud, duress, undue influence, breach of a fiduciary duty, or similar wrongful conduct.

Butt v. Bank of America, N.A., 477 F.3d 1171, 1185 (10th Cir. 2007). The type of wrongful conduct which warrants imposition of a constructive trust is any "breach of any legal or equitable duty" or the "commission of a wrong." Tartaglia v. Hodges, 10 P.3d 176, 189 (N.M. Ct. App. 2000) (affirming imposition of constructive trust). The Plaintiffs assert that they have

adequately pled a wrong in counts 2 (conversion of their property) and 3 (breach of fiduciary duty).

The Court agrees with the Plaintiffs that the allegations in counts 2 and 3, if proven, are sufficient to support the imposition of a constructive trust. In count 2, the Plaintiffs allege that under the Agreements the Deposits belong to the Plaintiffs and the Debtor agreed to hold them for the benefit of the Plaintiffs. They further allege that the Debtor unlawfully exercised dominion over the Plaintiffs' property when it refused to return the Deposits to them. In count 3, the Plaintiffs allege that by agreeing to receive and hold the Deposits for the benefit of the Plaintiffs, the Debtor was acting in a fiduciary capacity and that by refusing to return the Deposits in accordance with the terms of the Agreements, the Debtor breached that duty. These allegations, if proven, are sufficient for the imposition of a constructive trust under New Mexico law. See, e.g., Butt, 477 F.3d at 1185 (remanding to district court to find whether constructive trust should be imposed under New Mexico law where bank, though not acting under express trust, was alleged to have kept profits that belonged to plaintiff); Tartaglia, 10 P.3d at 189 (stating that a constructive trust is imposed to prevent unjust enrichment whenever any wrongful conduct warrants it, including breach of a legal or equitable duty, fraud, duress, undue influence, abuse of a confidence or breach of fiduciary duty).

a. Trust Relationship

The Noteholders contend nonetheless that to impose a constructive trust, there must be a fiduciary relationship or the intent to enter into a trust relationship. To create a trust relationship, the Noteholders argue, the parties must objectively manifest their intent to enter into that type of relationship. See, e.g., Aragon v. Rio Costilla Cooperative Livestock Assoc., 812 P.2d 1300, 1302 (N.M. 1991) (stating that an express trust "arises as a result of a manifestation of an intention to create it."); Tartaglia, 10 P.3d at 188 ("an express trust is one that is created by the manifest intention of the settlor to create it.").

The Noteholders contend that there is nothing in the Agreements evidencing the parties' intent to create an express trust or fiduciary relationship. They note that nowhere in the Agreements are the words "trust" or "fiduciary." Further they contend that there are provisions in the Agreements that are inconsistent with such a relationship. For example, the Agreements allowed the Debtor to assign all of its obligations under the Agreements. See 3 Scott & Ascher on Trusts § 17.3.1 (5th ed. 2007) ("a trustee clearly cannot transfer to another the whole responsibility for administering the trust."). The Agreements also provide that the Deposits will be forfeited as liquidated damages if the customers fail to execute final purchase agreements, which is inconsistent with an understanding

that the Deposits are held in trust for the customer. (Agreements at § 3.)

Finally, the Noteholders argue that the Agreements provide that each Deposit of $100,000 provided the customer with a credit of $125,000 toward the purchase of the Eclipse 400 Aircraft (a bargained-for exchange, more consistent with a debtor-creditor relationship than a trust relationship). See, e.g., Schrider v. Schlossberg (In re Greenbelt Rd. Second Ltd. P'ship), No. 94-1522, 1994 WL 592766, at *3-4 (4th Cir. Oct. 31, 1994) (dismissing complaint and denying imposition of constructive trust on earnest money deposit that had not been segregated); In re Faber's, Inc., 360 F. Supp. 946, 950 (D. Conn. 1973) (finding no constructive trust over pre-petition cash deposits that a debtor-retailer received from consumers for the purchase of goods). On very similar circumstances, the Noteholders argue, the District Court in Drexel Burnham found no trust:

> The Appellant's so-called deposit was not more than an ordinary payment of earnest money on account of a purchase of property. . . . The letter agreement expressing the contractual arrangement called for a down-payment, the so-called deposit, against the purchase price. The agreement made no requirement that the payment be segregated, trusteed, escrowed or otherwise be specially identified or separated in the seller's account or placed with anyone else for safekeeping or at interest. The letter agreement specifically provided that the Appellant's payment was to be nonrefundable, except in limited circumstances, in consideration of Group "foregoing [substantial other] opportunities." In short, there was no fiduciary arrangement contemplated or arranged.

Majutama v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 142 B.R. 633, 636 (S.D.N.Y. 1992).

The Plaintiffs respond that the cases cited by the Noteholders are not persuasive because they deal with express, not constructive trusts, or apply law other than New Mexico law. See, e.g., Greenbelt, 1994 WL 592766, at *4 (applying Maryland law); In re Morales Travel Agency, 667 F.2d 1069, 1071-72 (1st Cir. 1981) (applying Puerto Rico law); Faber's, 360 F. Supp. at 946 (applying Connecticut law); Skilled Nursing Prof. Servs. v. Sacred Heart Hosp. of Norristown (In re Sacred Heart Hosp. of Norristown), 175 B.R. 543, 554 (Bankr. E.D. Pa. 1994) (applying Pennsylvania law); Drexel Burnham, 142 B.R. at 636 n.2 (applying New York law); Fox v. Shervin (In re Shervin), 112 B.R. 724, 731 (Bankr. E.D. Pa. 1990) (applying Pennsylvania law); Aragon, 812 P.2d at 1302 (dealing with express trusts). In fact, the Sacred Heart Court noted that "the parties' intent is largely irrelevant to the creation of a constructive trust, which is nothing more than an imposition of an equitable remedy." Sacred Heart Hosp., 175 B.R. at 552.

The Court agrees with the Plaintiff that the imposition of a constructive trust does not depend on the parties' intent under New Mexico law. Rather it is an equitable remedy available in the event of wrongdoing by the defendant. See, e.g., Butt, 477 F.3d at 1185 (remanding for determination of whether constructive trust should be imposed under New Mexico law after finding bank

was not acting under express trust); Tartaglia, 10 P.3d at 189 (finding sufficient evidence for the imposition of a constructive trust based on findings of fraud, constructive fraud and a wrongful act in transferring property so that express trust could not attach). Therefore, the Court finds the cases cited by the Noteholders to be unpersuasive and finds that New Mexico law supports the Plaintiffs' count for imposition of a constructive trust.

b. Narrowly Construed

The Noteholders contend, however, that constructive trusts are construed narrowly in bankruptcy and that a typical debtor-creditor relationship is not sufficient to warrant the imposition of a constructive trust. Ades & Berg Group Investors v. Breeden (In re Ades & Berg Group Investors), 550 F.3d 240, 245 (2d Cir. 2008) (affirming dismissal of complaint and noting that court must be "mindful, in applying state constructive trust law, that the equities of bankruptcy are not the equities of common law."); Albuquerque Plaza Partners v. Carmichael (In re PKR, P.C.), 220 B.R. 114, 118 (B.A.P. 10th Cir. 1998) ("[T]he relationship of creditor-debtor is [in]sufficient to support the imposition of a constructive trust under either New Mexico law or that of any other jurisdiction. If the retention of funds or goods by an insolvent debtor were sufficient to support a claim for a constructive trust, the entire bankruptcy system would be unworkable."); Rowland, 140 B.R. at 209 ("One who keeps property

or retains the benefit of services without paying may be viewed as being unjustly enriched [but] this is precisely what occurs in many bankruptcy cases with respect to the claims of unsecured creditors.”).

The Plaintiffs argue that the cases cited by the Noteholders are distinguishable. They contend that they have alleged in the Complaint that there existed a fiduciary duty to segregate the funds. Specifically, the Plaintiffs contend the Complaint alleges that the parties understood that the Deposits would be segregated and only used for development of the Eclipse 400 Aircraft. The Complaint alleges that the Debtor acknowledged that obligation when it advised the Plaintiffs in September 2008 that their Deposits had not been used and were segregated. In fact, the Plaintiffs argue that the mere fact that the funds paid were called Deposits evidences a heightened duty by the Debtor to preserve them. See, e.g., Stone & Webster, 2009 WL 426118 at *4 (holding that escrow agreement can give rise to a fiduciary relationship). These allegations, the Plaintiffs contend, distinguish this case from the cases cited by the Noteholders. See, e.g., Drexel Burnham, 142 B.R. at 633 (no requirement that the funds be segregated or an unconditional right to a refund); Faber’s, 360 F. Supp. at 946 (no requirement to segregate funds); Greenbelt, 1994 WL 592766 (finding no constructive trust because plaintiff alleged that funds had not been segregated but commingled and were not traceable).

The Court agrees with the Plaintiffs that the Complaint contains sufficient allegations that the Debtor was required to segregate and return the Deposits. Further, the Complaint contains allegations that the Debtor had a fiduciary duty to the Plaintiffs which it breached. If proven, that is sufficient under New Mexico law to warrant the imposition of a constructive trust. See, e.g., Butt, 477 F.3d at 1185 (remanding with instructions to impose constructive trust if trial court finds that bank wrongfully withheld profits it received that should have gone to beneficial owner); Tartaglia, 10 P.3d at 189 (noting that breach of fiduciary duty would support imposition of constructive trust).

c. Res

The Noteholders argue that even if a trust or fiduciary relationship existed, no constructive trust can be imposed unless property is segregated from the rest of the settlor's property. See, e.g., Morales, 667 F.2d at 1071-72 (holding that even though the agreement was called a trust, there was only a debtor-creditor relationship because "in the absence of any provision requiring Morales to hold the funds in trust by keeping them separate, and otherwise restricting their use, the label 'trust' could . . . have no legal effect."); Shervin, 112 B.R. at 734 (finding no constructive trust because "there is no indication that there was an identified res of money, put apart and held separately and for the benefit of another."). The Noteholders

argue that the Agreements did not require that the Deposits be segregated by the Debtor. In fact, the Agreements acknowledge that the refund of the Deposits was generally to come from the Debtor's general account not from any escrow or deposit account. (Agreements at § 1.) See, e.g., Sacred Heart Hosp., 175 B.R. at 553-54 (finding no trust in part because the debtor could repay the sums due from whatever source he chose); Shervin, 112 B.R. at 734 (same).

The Noteholders contend, therefore, that the count for imposition of a constructive trust must fail because the Complaint does not, and cannot, allege that there was a res on which the constructive trust could attach. The Noteholders argue further that where the alleged trust funds have been commingled, as they allege they have been in this case, the Plaintiffs must identify and trace the trust funds in order to prevail. See, e.g., Goldberg v. New Jersey Lawyers' Fund for Client Protection, 932 F.2d 273, 280 (3d Cir. 1991) (holding that plaintiff must "identify and trace the trust funds if they are commingled"); PKR, 220 B.R. at 118 (holding that to show entitlement to constructive trust, plaintiff must "be able to trace the wrongfully-held property.").

In addition, the Noteholders assert that the funds which the estate currently holds are not traceable to the Deposits but are the proceeds of the sale of the Debtor's hard assets. (Sale Order ¶ 7.) Therefore, the Noteholders contend the constructive

trust count of the Complaint must be dismissed. See, e.g., Greenbelt Road, 1994 WL 592766, at *4 (affirming bankruptcy court's dismissal of complaint seeking imposition of constructive trust because complaint acknowledged that funds were not segregated and thus could not be traced).

The Plaintiffs respond that the Complaint does identify a res. The Complaint asserts that the Debtor represented to the Plaintiffs in September 2008 that their Deposits had not been used and were segregated. That identifies a res: the Deposits themselves that the Debtor was holding. The Plaintiffs further assert that they need trace the funds only if the Deposits were not segregated, a fact that is not alleged in the Complaint and which has yet to be established. The Plaintiffs contend, however, that even if the funds were commingled, they would be able to trace their funds by use of the lowest intermediate balance test. See, e.g., In re Columbia Gas Sys., Inc., 997 F.2d 1039, 1063 (3d Cir. 1993) ("The lowest intermediate balance rule . . . allows trust beneficiaries to assume that trust funds are withdrawn last from a commingled account . . . . Therefore, the lowest intermediate balance in a commingled account represents trust funds that have never been dissipated and which are reasonably identifiable."); Goldberg, 932 F.2d at 280 (holding that plaintiff must "identify and trace the trust funds if they are commingled"). The Plaintiffs assert that the allegations of the Complaint (that Deposits in increments of $100,000 were made

by the Plaintiffs in June and July 2008) are sufficient to allow for a tracing if it becomes necessary.

The Court concludes that on the face of the Complaint (which it must accept as the facts), the Plaintiffs have identified a res (the Deposits paid by them to the Debtor) which the Debtor acknowledged was segregated as late as September 2008, shortly before the Debtor filed its bankruptcy petition in November 2008. Thus the Plaintiffs have stated sufficient facts to identify a res and to state a facially plausible count for a constructive trust and the Court will not dismiss that count.

3. Priority of Noteholders' Liens

The Noteholders assert that they hold valid and perfected liens on substantially all of the Debtor's assets, which liens attached to the proceeds of the sale, including the funds currently held in escrow. (Cash Collateral Order ¶¶ E-G; Sale Order ¶¶ K, 7a.) The Noteholders contend that because there is no identifiable and traceable res, a constructive trust may not supersede their perfected security interests in the proceeds of the sale of the Debtor's assets. See, e.g., In re Lehigh & New England Ry. Co., 657 F.2d 570, 582 (3d Cir. 1981) ("trust fund claimants, who are unable to identify the funds set aside for them, may not invade a secured bondholder's interest."); In re U.S. Lan Sys. Corp., 235 B.R. 847, 855 (Bankr. E.D. Va. 1998) ("a constructive trust - if allowable at all - can attach only to

those proceeds from the sale of the debtor's assets that are unencumbered.").

However, as noted above, the Court has found that the Plaintiffs have alleged a res on which their constructive trust attached: the Deposits which the Debtor had represented were still segregated shortly before the bankruptcy petition was filed. The cases cited by the Noteholders are, therefore, distinguishable. Lehigh & New England Ry. Co., 657 F.2d at 578 (the proceeds had been commingled and all had been dissipated); U.S. Lan Sys., 235 B.R. at 849 (fund on which employees sought to impose constructive trust had never been segregated). Cf. In re General Coffee Corp., 828 F.2d 699, 706 (11th Cir. 1987) (concluding that under Florida law "a constructive trust beneficiary should have the same rights to the trust assets that a beneficiary of an express trust would have. An express trust beneficiary clearly has priority to trust assets over a judicial lienholder or execution creditor.").

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the Noteholders' Motion to dismiss will be denied.